**STATE FARM LIFE INSURANCE COMPANY and Robert Houser, Defendants-Appellants,**

**v.**

**FORT WAYNE NATIONAL BANK, as Personal Representative of James L. Zimmerman, Deceased, Plaintiff-Appellee.**

**No. 3–384A72.**

Court of Appeals of Indiana, Third District.

Feb. 18, 1985.

Edward L. Murphy, Jr., Edward J. Liptak, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for defendants-appellants.

Frederick A. Beckman, Thomas J. Goeglein, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for plaintiff-appellee.

HOFFMAN, Judge.

Fort Wayne National Bank, in the capacity of personal representative, filed suit against State Farm Life Insurance Company and Robert Houser, for failure to properly effect insurance on the life of its decedent, James Zimmerman. Following trial to the court, judgment was rendered in favor of the estate for $34,373.97, plus pre-judgment interest. State Farm and Houser appeal.

The record discloses that James owned 95% of Zimmerman Excavating Service, Inc., while his son, Steven, owned the remaining 5%. In 1975, James purchased insurance on his life from Robert Houser of State Farm Insurance. Steven was named beneficiary, and the undisputed purpose of this policy was to fund Steven's purchase of stock in the event of James' death. On April 1, 1980, James died. The insurance proceeds were paid to Steven, but because the policy named James as owner, the proceeds passed through his estate causing a $34,373.97 tax consequence.

The dispute between the parties centers around James' ownership of the policy. The trial court concluded that State Farm and Houser were negligent in that they knew the purpose of this policy, but failed to advise James of the consequences. Had Steven been named as owner, the estate would have saved $34,373.97 in state and federal taxes.

State Farm first contends that the trial court erred in excluding the testimony of its agents under Indiana's Dead Man's Statutes. At trial, State Farm sought to introduce the testimony of Houser and Vernon Deutsch concerning statements made by James at the time he applied for insurance. The trial court declared the agents incompetent to testify under IND.CODE §§ 34-1-14-6 and 34-1-14-8. IND.CODE § 34-1-14-6 provides as follows:

"Sec. 6. In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during a lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to, such matters against such estate: Provided, however, That in cases where a deposition of such decedent has been taken, or he has previously testified as to the matter, and his testimony or deposition can be used as evidence for such executor or administrator, such adverse party shall be a competent witness for himself, but only as to any matters embraced in such deposition or testimony."

▮▮▮ Generally, the purpose of this statute is to protect decedents' estates from spurious claims. *Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820. The Dead Man's Statutes guard against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death. *Satterthwaite v. Estate of Satterthwaite* (1981), Ind.App., 420 N.E.2d 287. A witness is rendered incompetent under IND.CODE § 34-1-14-6 when the following requirements are met:

"a. The action must be one in which an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor;

"b. It must involve matters which occurred within and during the lifetime of the decedent;

"c. It must be a case in which a judgment or allowance may be made or rendered for or against the estate

represented by such executor or administrator;

"d. The witness must be a necessary party to the issue and not merely a party to the record;

"e. The witness must be adverse to the estate and must testify against the estate."

420 N.E.2d at 289–290.

State Farm specifically argues that the statute does not render witnesses incompetent where the estate appears as party plaintiff to prosecute such witnesses or their principals with charges of negligence. In the alternative, State Farm alleges that an estate which prosecutes a negligence action waives the right to have adverse witnesses rendered incompetent under the statute.

■ Indiana cases demonstrate that the Dead Man's Statute applies to all cases in which a judgment may result for or against the estate, notwithstanding the parties' positions as plaintiff or defendant. *See, Satterthwaite, supra;* IND.CODE § 34–1–14–6. Furthermore, the Dead Man's Statute has been applied to render parties defendant incompetent to testify in tort cases brought on behalf of an estate. *Zimmerman v. Beatson* (1906), 39 Ind. App. 664, 79 N.E. 518. Neither the express language of the statute nor accepted concepts of fairness should preclude application of the statute so long as no statements made by the decedent are admitted through depositions or public records made during his life.

■ State Farm also contends that its agents did not possess interests *adverse to the estate,* sufficient to render them incompetent. The trial court also found the agents incompetent under IND.CODE § 34–1–14–8, which provides in part that:

"No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness, in any suit, upon, or involving, such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal

to such contract, against the legal representatives, or heirs of the decedent, unless he shall be called by such heirs or legal representatives."

In order to render an agent incompetent under this section, the agent must have actively negotiated an agreement on his principal's behalf. *Hoopingarner v. Bowser et al.* (1972), 153 Ind.App. 399, 287 N.E.2d 570. Unlike IND.CODE § 34–1–14–6, this section does not require that the proffered witness possess an interest adverse to the estate. It is sufficient that he actively represented his principal in making or continuing the contract.

■ Robert Houser served as State Farm's local agent in negotiating the insurance policy with James Zimmerman. Houser was accompanied by State Farm's agency manager, Vernon Deutsch, who rendered technical advice on terms and conditions of the policy. The trial court reasonably inferred from this scenario that Houser and Deutsch actively negotiated the contract, rendering them incompetent to testify about their meetings.

In the alternative, it appears that Houser and Deutsch did possess interests adverse to the estate sufficient to render them incompetent under IND.CODE § 34–1–14–6. A corporation works exclusively through the actions of its agents. When acting within the scope of corporate responsibility, the corporation's interests merge with the interests of the agents. The statute clearly contemplates that corporate agents who transact business with one later deceased possess an interest adverse to the estate. The trial court did not err in finding Houser or Deutsch incompetent to testify.

State Farm next contends that the trial court erred in refusing to admit a memorandum drafted by Houser at the time the Zimmerman policy was prepared. State Farm asserts that this memo is not the testimony of a witness, but real evidence which is not prohibited by the Dead Man's Statutes.

■ The purpose of the Dead Man's Statutes is not to exclude evidence, but to

prevent a particular class of witnesses from testifying against an estate. *Satterthwaite, supra.* A writing is not the testimony of a witness, but real evidence which requires a proper foundation prior to its admission at trial. Tanford and Quinlan, *Indiana Trial Evidence Manual,* (1982) § 13.6. As with all real evidence, the relevance of a document must be established through testimony concerning its role in the transaction at issue. *See, Smith v. Crouse-Hinds Co.* (1978), 175 Ind.App. 679, 373 N.E.2d 923.

■■■■■ In the case at bar, State Farm attempted to authenticate the memorandum through the testimony of Houser and Deutsch. A witness rendered incompetent under the Dead Man's Statutes is likewise incompetent to authenticate documents related to his transaction with the decedent. *See, Merritt v. Straw, Administrator* (1893), 6 Ind.App. 360, 33 N.E. 657. Since neither Houser nor Deutsch were qualified to testify concerning the memo, the trial court properly excluded its admission into evidence.

State Farm next contends that the evidence was insufficient to support the trial court's findings and conclusions that:

a) State Farm and Houser negligently prepared Zimmerman's insurance application;

b) State Farm and Houser were negligent in failing to clarify the insurance application for Zimmerman; and

c) State Farm negligently trained Houser.

■■■■■ An insurance agent owes his proposed insured a duty to exercise reasonable care, skill, and diligence in effecting insurance. *Town & Country Mut. Ins. Co. v. Savage* (1981), Ind.App., 421 N.E.2d 704; *Bulla v. Donahue et al.* (1977), 174 Ind.App. 123, 366 N.E.2d 233. Where an insurance broker promises to procure a policy under circumstances which lead the applicant to believe that insurance is provided, the law will require the agent to perform the duty which he has undertaken. *Savage, supra.* Furthermore, if an insurance

agent negligently represents policy coverage and it can be shown that the company has knowledge of this fact, the company may be held liable. *Vernon Fire & Cas. Ins. Co. v. Thatcher et ux.* (1972), 152 Ind.App. 692, 285 N.E.2d 660.

■■■■ The evidence most favorable to the trial court's judgment indicates that James and Steven Zimmerman executed a buy/sell agreement which required the insurance beneficiary to own the policy. Agents for the Lincoln Life Insurance Company testified that when James applied for insurance in 1974, Steven was designated as the proposed beneficiary and policy owner. When Lincoln's quoted premium proved to be too expensive, the Zimmermans applied for a similar policy with State Farm. Evidence including a retail credit report and the testimony of Steven's wife indicated that State Farm knew the policy was meant to fund a buy/sell agreement, and took steps to comply with such an agreement. All policy premiums were paid by Steven, indicating that James and Steven intended for Steven to own the policy. Expert testimony was proffered which established that failure on the part of an insurance company and its agents to conform a life insurance policy with the obvious desires of the insured is inconsistent with the skill, knowledge, diligence and care ordinarily exercised in the insurance industry. From these facts, the trial court reasonably inferred that State Farm was negligent in effecting the Zimmerman insurance policy.

■■■■ Finally, State Farm contends that the trial court erred in failing to find James Zimmerman contributorily negligent. As stated above, the record shows that James desired Steven to be not only the beneficiary, but also the owner of the policy. The record also indicates that James was not familiar with the legal means to achieve this end, but relied on State Farm to properly execute his intentions. The evidence is sufficient to establish that James was neither negligent, nor did he incur the risk of loss.

The judgment is affirmed.

Affirmed.

STATON, P.J., concurs.

GARRARD, J., concurs in result.