In re the ESTATE OF Madlyn Iverne LAMBERT, Deceased.

Daniel E. Lambert, Guardian and Daniel E. Lambert, Individually, Appellants–Petitioners,

v.

Suella Southard, Personal Representative, Appellee–Respondent.

No. 90A02–0208–CV–675.

Court of Appeals of Indiana.

April 1, 2003.

Michael T. Yates, Moss, Harris & Yates, Fort Wayne, IN, Attorney for Appellants.

Michael W. Lautzenheiser, Sr., Lautzenheiser, Myers & Holdman, Bluffton, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Petitioners, Daniel E. Lambert, Individually (Lambert), and as Guardian for Lee Wayne Lambert (Lee Lambert), (collectively, the Lamberts), appeal the trial court's Order regarding ownership of assets.

We affirm.

### ISSUES

The Lamberts raise two issues for our review, which we restate as follows:

1. Whether the trial court erred by finding a witness incompetent to testify; and

2. Whether the trial court erred in finding that no resulting trust or constructive trust was created with respect to the decedent's insurance proceeds.

### FACTS AND PROCEDURAL HISTORY

On December 13, 2000, Madlyn Iverne Lambert (decedent) died testate. On December 20, 2000, the decedent's estate was opened and Suella Southard, the decedent's daughter, was appointed as the personal representative. The distributees in the decedent's will were her daughter, Suella Southard (Personal Representative Southard), and her sons, Steven Powell (Powell) and the Lamberts.

According to the terms of the will and testament, Personal Representative Southard and Powell were to each receive 42½ of the net estate. Lee Lambert received an amount equal to 5% of the net estate, which was held jointly with Personal Representative Southard, for the burial and funeral expenses upon the decedent's

death. Additionally, Lambert was to receive 10% of the net estate.

Prior to the decedent's death and from September 24, 1997, Personal Representative Southard served as the decedent's attorney-in-fact. The decedent had a life insurance policy with CUNA life insurance company (CUNA), which insured her life for the amount of $25,000. The decedent named Personal Representative Southard as the beneficiary on this policy.

On February 2, 2001, Personal Representative Southard filed her first inventory. On August 21, 2001, Personal Representative Southard filed the Personal Representative's Final Account, Petition To Settle and Allow Account, and Petition For Authority to Distribute Assets Remaining and Close Estate (final report and accounting) in the Estate of Madlyn Iverne Lambert, deceased (Estate), in an action entitled:

> In The Matter of The Supervised Estate of
> Madlyn Iverne Lambert
> In the Wells Circuit Court
> Cause No. 90C01–0012–ES–95

On September 4, 2001, Lambert filed his Objection to the final report and accounting individually and as Guardian for Lee Lambert. The Objection alleged that Personal Representative Southard failed to include all property in the estate. Specifically, the Lamberts alleged that approximately 444 canning jars, which he estimated at $3,552; a Sears Kenmore vacuum cleaner; a china cabinet and various other items were not included. Most importantly, the Lamberts argued that life insurance proceeds payable to Personal Representative Southard in the approximate amount of $25,000 from a life insurance policy with CUNA were not included in the estate. The Lamberts alleged that the express intent of the decedent was that the life insurance proceeds were used to pay the expenses of the decedent's es-

tate. Further, the Lamberts argued that a constructive trust was created with respect to the life insurance proceeds.

On May 1, 2002, a hearing on the Lamberts' Objection was held. At the hearing, Personal Representative Southard raised the issue that the evidence and testimony that the Lamberts intended to offer were inadmissible under Indiana Code § 34–45–2–4, known as the Indiana Dead Man's Statute. The Lamberts moved for a continuance in order to brief the Indiana Dead Man's Statute. As a result, the trial court granted the Lamberts' continuance and the Objection hearing was reset for July 25, 2002.

On July 25, 2002, the hearing on the Lamberts' Objection resumed. At the hearing, the Lamberts sought to introduce evidence of statements made by the decedent, that it was her intention that the life insurance proceeds paid to the Personal Representative were to be used to pay the decedent's estate expenses. The Personal Representative objected to this evidence on the grounds that it was inadmissible pursuant to I.C. § 34–45–2–4. The trial court sustained the Personal Representative's objection. As a result, the Lamberts made offers of proof to the evidence that was ruled inadmissible by the trial court.

On August 7, 2002, the trial court entered its Order. In its Order, the trial court granted the Lamberts' Objection to the final report and accounting, in part, and denied the Objection, in part. Specifically, the trial court held that there was no constructive trust or resulting trust with respect to the life insurance proceeds.

The Lamberts now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Dead Man's Statute

■ In the present case, the Lamberts argue that the trial court erred in exclud-

ing the testimony of one of their witnesses under the Indiana Dead Man's Statute. Specifically, the Lamberts assert that the trial court erred in excluding the testimony of Powell, who is the son of the decedent and a distributee under the decedent's will. The testimony concerns a conversation that Powell had with the decedent while the decedent was alive. However, the Lamberts contend that Powell's testimony is not barred by the Indiana Dead Man's Statute because Powell is not making a claim against the Estate. In particular, the Lamberts allege that, because Powell did not object to the final accounting and is not seeking any money or property from the estate based upon the objection, he is qualified to testify. Alternatively, the Personal Representative maintains that the Indiana Dead Man's Statute does apply because Powell is a distributee under the estate and would directly benefit from the decision. We agree.

Indiana Code § 34–45–2–4 provides as follows:

(a) This section applies to suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

(b) Except as provided in subsection (c), a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate.

(c) In cases where:

(1) a deposition of the decedent was taken; or

(2) the decedent has previously testified as to the matter;

and the decedent's testimony or deposition can be used as evidence for the executor or administrator, the adverse party is a competent witness as to any matters embraced in the deposition or testimony.

Generally, when an executor or administrator of an estate is one party, the adverse parties are not competent to testify about transactions that took place during the lifetime of the decedent. *J.M. Corp. v. Roberson*, 749 N.E.2d 567, 571 (Ind.Ct.App.2001); I.C. § 34–45–2–4. Furthermore, the purpose of this statute is to protect decedents' estates from spurious claims. *State Farm Life Ins. Co. v. Fort Wayne Nat. Bank*, 474 N.E.2d 524, 526 (Ind.Ct.App.1985). The Dead Man's Statute guards against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death. *Id.*

We have held that the Dead Man's Statute applies to all cases in which a judgment may result for or against the estate, notwithstanding the parties' positions as plaintiff or defendant. *J.M. Corp.*, 749 N.E.2d at 571. In addition, neither the express language of the statute nor accepted concepts of fairness should preclude application of the statute so long as no statements made by the decedent are admitted through depositions or public records made during his life. *Id.* Furthermore, where the trial court rules on witness competency the ruling will not be reversed absent a clear abuse of the trial court's discretion. *Id.* An abuse of discre-

tion will be found when the ruling is against the logic and effect of the facts and circumstances before the trial court. *Id.*

Although we agree that Powell is not a party to the issue, we believe that he does have both an interest in favor and in common with Lambert. *See Satterthwaite v. Estate of Satterthwaite*, 420 N.E.2d 287, 290 (Ind.Ct.App.1981) (A party to an interest is not automatically made a party to the issue. If the party is merely one of record, it must appear that he has an interest in the suit in common with the party calling him.) We have previously held that an interest which would render a witness incompetent is one by which the witness will gain or lose by the direct legal operation of that judgment. *Satterthwaite*, 420 N.E.2d at 290. Here, if the insurance proceeds were used to pay estate expenses, the proceeds would directly impact the estate by increasing the amount of funds available for distribution to the heirs of the estate. As stated above, under the terms of the decedent's last will and testament, Powell is to receive a 42½ interest in the net estate. Thus, Powell, as an heir to the estate, will gain by the direct legal operation of a judgment in Lambert's favor.[1] As we have previously stated, a witness who will be affected in a material sense by the success of a party is considered to favor that party. *Satterthwaite*, 420 N.E.2d at 290. Therefore, Powell's testimony is barred by I.C. § 34–45–4–2. As a result, the trial court was correct in determining that Powell was incompetent to testify based upon the Indiana Dead Man's Statute.

II. *Resulting and Constructive Trust*

Next, the Lamberts claim that the trial court erred by finding that no resulting or constructive trust was created as to the life insurance proceeds. Specifically, the Lamberts argue that evidence as to the decedent's intent with respect to the use of the life insurance proceeds is material to whether a resulting or constructive trust was created. Therefore, because the trial court did not admit and consider the evidence of Powell's testimony regarding the decedent's intent, the trial court committed reversible error.

As discussed above, we determined that the trial court did not err in excluding Powell's testimony based upon the Indiana Dead Man's Statutes. Therefore, any testimony by Powell regarding the decedent's intent of forming a resulting or constructive trust with the life insurance proceeds is barred by I.C. § 34–45–2–4. *See* I.C. § 34–45–2–4. For these reasons, we do not reach the Lambert's claim that a resulting or constructive trust was formed by the life insurance proceeds. Rather, we find that the trial court properly found that no resulting or constructive trust was created with respect to the life insurance proceeds.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's Order regarding ownership of the life insurance proceeds was proper.

Affirmed.

BAKER, J., and MATHIAS, J., concur.

---

**1.** We note that the Appellant cites to *Satterthwaite*, 420 N.E.2d at 290, in support of his position. However, we find that this case is distinguished from *Satterthwaite* in that the testifying witness, who was a party to the case but not a party to the issue, parted with her interest in the estate. Therefore, she had no interest in the final outcome of the case. Whereas, Powell has not given up his interest in the estate.